**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 0 8 2009 ★

BROOKLYN OFFICE

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

*CV00-2258*

August Term, 2009

(Argued: September 3, 2009    Decided: September 29, 2009)

Docket No. 09-3716-cv

---

DARREN F. MURRAY, MARY A. DEVITO, KEVIN L. HYMS,
HARRY S. PURNELL III, KATHY VANDERVEUR, and MICHAEL A.
GIANNATTASIO,

*Plaintiffs-Appellees,*

—v.—

METROPOLITAN LIFE INSURANCE COMPANY and METLIFE, INC.,

*Defendants-Appellants.*

---

B e f o r e:

JACOBS, Chief Judge, WESLEY and HALL, *Circuit Judges.*

---

Defendants-appellants Metropolitan Life Insurance Company and MetLife, Inc. appeal an order of the United States District Court for the Eastern District of New York (Platt, *J.*), disqualifying its counsel Debevoise & Plimpton LLP shortly before trial. On September 22, 2009, this Court reversed the disqualification order, with opinion to follow. This is that opinion.

---

33

TERESA WYNN ROSEBOROUGH, KEVIN S. FINNEGAN, DUNCAN J. LOGAN, Metropolitan Life Insurance Company, New York, New York; MICHAEL B. MUKASEY, MARY JO WHITE, BRUCE E. YANNETT, MARK P. GOODMAN, Debevoise & Plimpton LLP, New York, New York, *for Appellants.*

JARED B. STAMELL, Stamell & Schager, LLP, New York, New York (John C. Crow, David K. Bowles, Robert A. Skirnick, and Samantha H. Evans, on the brief), *for Appellees.*

---

DENNIS JACOBS, *Chief Judge:*

Plaintiffs in this class action were policyholders of Metropolitan Life Insurance Company when it was a mutual insurance company. They complain that they were misled and shortchanged in the transaction by which the company demutualized in 2000. Nine years after the action was commenced and five weeks before trial was scheduled to begin, plaintiffs moved to disqualify the lead counsel for Metropolitan Life Insurance Company and MetLife, Inc. ("MetLife"), Debevoise & Plimpton LLP ("Debevoise"). The grounds alleged related to that firm's representation of MetLife in the underlying demutualization. The United States District Court for the Eastern District of New York (Platt, *J.*) granted the motion to disqualify on September 1; the district court then stayed its order and immediately certified the issue to this Court pursuant to 28 U.S.C. § 1292(b). We accepted the certification on September 2, and on September 3 we heard oral argument. After time allotted for additional briefing, a short delay caused by the recusal of two judges, and the observance of national and religious holidays, we reversed the disqualifica-

34

EVIN S. FINNEGAN,
:ropolitan Life
York, New York;
' Jo WHITE, BRUCE
ʌAN, Debevoise &
, New York, *for*


:hager, LLP, New
Crow, David K.
, and Samantha H.
*pellees.*



holders of Metro-
as a mutual insur-
were misled and
e company demu-
ı was commenced
:o begin, plaintiffs
Metropolitan Life
ʌetLife"), Debev-
e grounds alleged
.ife in the underly-
:trict Court for the
nted the motion to
urt then stayed its
) this Court pursu-
he certification on
ırd oral argument.
ng, a short delay
the observance of
d the disqualifica-

tion by order dated September 22, with opinion to follow. This is that opinion.

The district court disqualified Debevoise on the ground that its representation of MetLife in the 2000 demutualization made it counsel to the policyholders as well. On appeal, plaintiffs urge affirmance on that ground, and also on the independent ground that the witness-advocate rule requires disqualification because four Debevoise lawyers who worked on the demutualization will give testimony adverse to MetLife at trial.

We conclude that (i) Debevoise did not have an attorney-client relationship with the policyholders by virtue of its representation of MetLife; and (ii) plaintiffs have failed to establish that the purported violation of the witness-advocate rule in this case would warrant disqualification. Accordingly, we reverse.

## I

In 1915, MetLife converted from a stock life insurance company to a mutual insurance company. On April 7, 2000, MetLife completed a months-long process of demutualization back to a stock insurance company. Debevoise served as MetLife's corporate counsel in that transaction.

On April 18, 2000, plaintiffs filed this class action lawsuit in the Eastern District of New York, alleging that MetLife violated federal securities laws by misrepresenting or altogether omitting certain information from the materials provided to its policyholders during the demutualization process. In June 2007, MetLife invoked the attorney-client privilege to prevent plaintiffs' discovery of particular communications between MetLife and its in-house and outside counsel. The district court denied a protective order on the ground that the plaintiff policyholders were the owners of the mutual com-

35

pany and were therefore clients of Debevoise during the demutualization.

Following discovery and the usual preliminaries, the trial was set to begin on September 8, 2009. When last-minute settlement negotiations failed, plaintiffs moved to disqualify Debevoise on July 31, 2009—more than nine years after the action was commenced, more than two years after the court ruled that plaintiffs were clients of Debevoise, and five weeks before trial. Plaintiffs argued that disqualification was appropriate for the same reason articulated by the district court to support its 2007 discovery ruling: Debevoise had been counsel to plaintiffs in the demutualization and cannot now jump sides to become adverse to plaintiffs at trial. Plaintiffs also argued that disqualification was required by the witness-advocate rule, because four Debevoise lawyers are scheduled to testify about disclosures and documents related to the demutualization.

MetLife's response invoked the doctrine of laches; argued that as a matter of law the policyholders of a mutual insurance company are not *a priori* the clients of that company's corporate counsel; denied that the testimony of the Debevoise lawyers would be adverse to MetLife (or even significant); and charged that the motion was made for improper tactical purposes.

On September 1, the district court granted plaintiffs' motion and disqualified Debevoise. The following colloquy explains the court's decision:

| [MetLife]: | . . . [B]ut Debevoise represents in this litigation MetLife Inc. and Metropolitan Life Insurance Company, and not the shareholders of MetLife Inc. |
|---|---|
| The Court: | I understand that and that's the result of the demutualization pro- |

cess, and I fully understand that. But the problem is whether your representation of the policyholders which turned into a representation of the corporation is tainted because of a conflict.

[MetLife]:

And your Honor is aware that our position is that Debevoise & Plimpton never represented the policyholders of Metropolitan Life Insurance Company or—either before this litigation began or presently.

The Court:

You did represent the policyholders, because there was—they were the corporation. That's the problem. The problem was that all of the former or the policyholders were the owners of the corporation. So you represented them and the track if you will because there was no—they were your clients.

Having granted the motion, the court immediately stayed its order and certified the following question to this Court: "Should Debevoise & Plimpton be disqualified from representing MetLife in this case based on a conflict of interest[?]" We accepted certification and now reverse.

## II

Plaintiffs argue that the district court's 2007 discovery ruling (that plaintiffs are clients of Debevoise) is now law of the case, which we lack jurisdiction to review. We conclude, first, that we have jurisdiction to consider the question; and second,

37

that under New York law, the policyholders of a mutual insurance company are not the clients of that company's outside counsel. New York law is applicable to this case because Metropolitan Life Insurance Company was a mutual life insurance company that was reorganized into a stock insurance company under New York law, with its principal place of business in New York, doing business in all fifty states.

Under 28 U.S.C. § 1292(b), a district court can certify a question for interlocutory appeal if the issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and [if] an immediate appeal from the order may materially advance the ultimate termination of the litigation." In ruling on a certified question of law, "we have the discretion to entertain an appeal of another ruling of the district court if the two rulings were 'inextricably intertwined' or if 'review of the [latter] decision was necessary to ensure meaningful review of the former.'" *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 122 (2d Cir. 2007) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995))); *see also Golino v. New Haven*, 950 F.2d 864, 868 (2d Cir. 1991) ("[W]here we have jurisdiction to consider some questions on appeal, we may exercise our discretion to take pendent jurisdiction over related questions.").

The district court's 2007 and 2009 decisions are clearly related. In 2007, the court determined that prior to demutualization, "MetLife's policyholders were the clients for MetLife's in-house and outside counsel, because they were MetLife's beneficiaries and the beneficiaries of MetLife counsel's advice." *In re MetLife Demutualization Litig.*, 495 F. Supp. 2d 310, 314 (E.D.N.Y. 2007). The 2009 ruling explained similarly that "the problem, and Debevoise's problem, is they represented the policyholders up until the day on

38

the closing when they walked over across the aisle and started representing the stockholders, if you will, and [ ] the corporation more exactly . . . ." Because these two rulings are "inextricably intertwined," we have jurisdiction to decide whether plaintiffs were, in fact, clients of Debevoise.

## III

We conclude that plaintiffs were not clients of Debevoise. It is well-settled that outside counsel to a corporation represents the *corporation*, not its shareholders or other constituents. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983) ("A 'corporate attorney'—whether an in-house lawyer or a law firm that serves as counsel to the company—owes a duty to act in accordance with the interests of the corporate entity itself. [The] client is the corporation."). This rule is entirely consonant with Rule 1.13 of the New York Rules of Professional Conduct, N.Y. R. Prof'l Conduct § 1.13(a) ("[A] lawyer employed or retained by an organization . . . is the lawyer for the organization and not for any of the constituents."), and with the Restatement (Third) of the Rule Governing Lawyers, § 96 cmt. b (explaining that a lawyer retained by a corporation has an attorney-client relationship with the corporation, but the lawyer "does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as shareholders").

These principles apply as well to a mutual insurance company. Under New York law, "[a] mutual insurance company is a cooperative enterprise in which the policyholders constitute the members for whose benefit the company is organized, maintained and operated." *Fid. & Cas. Co. of N.Y. v. Metro. Life Ins. Co.*, 248 N.Y.S.2d 559, 565 (N.Y. Sup. Ct. 1963). But a policyholder, "even in a mutual company, [is] in no sense a partner of the corporation which issued the policy,

39

and . . . the relation between the policy-holder and the company [is] one of contract, measured by the terms of the policy." *Uhlman v. N.Y. Life Ins. Co.*, 17 N.E. 363, 365 (N.Y. 1888).

The district court's 2007 decision reasoned that plaintiffs were clients of Debevoise during the demutualization "because they were MetLife's beneficiaries and the beneficiaries of MetLife counsel's advice." *In re MetLife Demutualization Litig.*, 495 F. Supp. 2d 310, 314 (2d Cir. 2007). But this does not distinguish a mutual insurance company from any other corporation.

Not every beneficiary of a lawyer's advice is deemed a client. *See* N.Y. R. Prof'l Conduct 2.3(a) ("A lawyer may provide an evaluation of a matter affecting a client for the use of *someone other than the client* if the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client.") (emphasis added); *see also Fiala v. Metro. Life Ins. Co.*, 6 A.D.3d 320, 322, 776 N.Y.S.2d 29, 32 (1st Dep't 2004) ("[A]n insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured."); N.Y. State Bar Ass'n, Comm. on Prof'l Ethics, Op. No. 477 (1977) (explaining that the lawyer for the executor of an estate need not provide substantive legal advice to potential beneficiaries because doing so would violate the lawyer's duty to provide undivided loyalty to his client, the executor).

In light of these principles, and without any extraordinary circumstances raised by the parties, we conclude that the policyholders in this case were not clients of Debevoise.

## IV

Plaintiffs make the separate argument that disqualification of Debevoise is proper by virtue of the witness-advocate rule

40

set out in Rule 3.7 of the New York Rules of Professional Conduct. Subsection (a) of the Rule provides, with certain exceptions, that "[a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. R. Prof'l Conduct § 3.7(a). Subsection (b) is broader, as it addresses imputation: "A lawyer may not act as an advocate before a tribunal in a matter if . . . another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *See* N.Y. R. Prof'l Conduct § 3.7(b)(1).

Rule 3.7 lends itself to opportunistic abuse. "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions" under the witness-advocate rule. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). The movant, therefore, "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Id.* "Prejudice" in this context means testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.*

As this definition suggests, the showing of prejudice is required as means of proving the ultimate reason for disqualification: harm to the integrity of the judicial system. We have identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a

41

result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused. *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004) (internal citations and alterations omitted). These concerns matter because, if they materialize, they could undermine the integrity of the judicial process. *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process.") (internal quotation marks omitted); *see also id.* (emphasizing "the need to maintain the highest standards of the profession") (internal quotation marks omitted).

In imputation cases (Rule 3.7(b)), the witness is not acting as trial counsel; these concerns are therefore "absent or, at least, greatly reduced." *Ramey*, 378 F.3d at 283 (internal quotation marks omitted); *see also* A.B.A. Model Rules of Prof'l Conduct § 3.7 cmt. 5 ("Because the tribunal is not likely to be misled when a lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness, [Model Rule 3.7(b)] permits the lawyer to do so except in situations involving a conflict of interest."). Accordingly, disqualification by imputation should be ordered sparingly, *see Kubin v. Miller*, 801 F. Supp. 1101, 1114 (S.D.N.Y. 1992), and only when the concerns motivating the rule are at their most acute.

Therefore, we now hold that a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result. This new formulation is consistent with our prior efforts to limit the tactical misuse of the witness-advocate rule. *See, e.g., Lamborn*, 873 F.2d at 531.

42

## A

In this case, four Debevoise lawyers are likely to be called to testify at trial. Three of them are transactional lawyers who are not and will not be trial advocates; the fourth, a litigator, is a member of the trial team, but will not act as an advocate before the jury. None of these witnesses, then, is properly considered trial counsel for purposes of Rule 3.7(a). *See Ramey*, 378 F.3d at 283 ("The advocate-witness rule applies, first and foremost, where the attorney representing the client *before a jury* seeks to serve as a fact witness *in that very proceeding*.") (first emphasis added). If the rule applies here at all, therefore, it will be subsection (b) (imputation), and plaintiffs do not contend otherwise.

## B

The parties dispute whether the Debevoise lawyer-witnesses will give testimony so prejudicial to MetLife that the integrity of the judicial system may be threatened and disqualification warranted. Our review of the record suggests that the Debevoise witnesses will do little more than authenticate documents and confirm facts that do not appear to be in dispute. For example, plaintiffs state that they intend to use the testimony of Wolcott Dunham, a Debevoise transactional lawyer, to show that MetLife "intentionally or recklessly omitted material facts from the prospectus." A review of the cited deposition excerpts, however, reveals only that Dunham testified that it was inaccurate to characterize a policyholder's interest in the company as "ownership." MetLife argues that this testimony is not adverse to its position in this litigation. Plaintiffs assert that MetLife is wrong, but do not explain why.

Plaintiffs contend that they will use the testimony of James Scoville, another Debevoise transactional lawyer, to establish that "MetLife revealed that a significant portion of the value

43

of the Demutualization that it had said was set aside for poli-
cyholders was in fact earmarked for new stockholders." A
review of the cited deposition testimony, however, shows that
Scoville testified only to what various written documents
clearly state. It appears that at most Scoville will be asked to
authenticate those documents. And the same is true for the
remaining witnesses.

We doubt that, on this record, the testimony at issue is suf-
ficiently prejudicial to MetLife to warrant disqualification.
We recognize, however, that we are not in a good position to
answer this question; and there is no finding by the district
court on this issue of fact.

Even if we assume that some portion of the Debevoise law-
yers' testimony will be adverse to MetLife (when considered
in a context that we cannot fully evaluate or appreciate on this
interlocutory appeal), plaintiffs have failed to establish the
clear and convincing evidence of prejudice necessary to jus-
tify the extreme remedy of disqualification by imputation.

First (as noted above), the concerns motivating Rule 3.7 are
attenuated where, as here, the witness-"advocate" is *not*
someone who will be trying the case to the jury. Therefore,
plaintiffs seeking disqualification under Rule 3.7(b) must
make a considerably higher showing of prejudice than would
be required under Rule 3.7(a). From the outset, then, we are
inclined to conclude that disqualification is inappropriate in
this case.

Second, MetLife's desire to keep Debevoise as its trial
counsel, plainly evidenced by MetLife's position in this
appeal, militates strongly against a finding of prejudice. This
appeal has been prosecuted in large part by MetLife's in-
house lawyers, who have argued to this Court that disqualifi-
cation was improper and that Debevoise should be reinstated,
notwithstanding that Debevoise non-advocate lawyers are

44

scheduled to testify as fact witnesses during trial. We are reluctant to conclude that MetLife, a sophisticated client with sophisticated in-house counsel, has a radically defective understanding of the case after nine years of litigation.

## C

Even if plaintiffs could convince us that allowing Debevoise to remain as MetLife's trial counsel poses some threat to the integrity of the judicial process, we must also consider whether that vital interest may be harmed by disqualification. Parties have a well-recognized and entirely reasonable interest in securing counsel of their choice. Prospective jurors, who must leave their homes and occupations to serve, have an interest in judicial efficiency, an interest that we respect. Other litigants, whose pending matters are affected or delayed by developments in other cases, are also harmed by the uncertainties caused by disqualification. And the public in general has an interest in the swift and orderly administration of justice.

In this case, disqualification would require MetLife to retain new counsel. Appreciable time and money would be spent to bring new counsel to the state of readiness that Debevoise attained after more than nine years of work. And other circumstances intensify the harm to MetLife: several billions of dollars are at stake, the legal issues are complex, pretrial litigation has been ongoing for more than nine years, and disqualification occurred on the eve of trial.

Finally, plaintiffs' lengthy and unexcused delay in bringing its motion to disqualify weighs against disqualification. When plaintiffs filed this lawsuit in 2000, they knew that Debevoise had represented MetLife during demutualization and that it would continue to represent MetLife in this litigation. But plaintiffs did not move to disqualify even when, seven years later, the district court ruled that plaintiffs were clients of

45

Debevoise. Instead, plaintiffs waited until after settlement negotiations broke down, five weeks before trial was scheduled to begin, to finally file their motion.

Plaintiffs' delay, which suggests opportunistic and tactical motives, magnify the harms to the judicial system that already inhere in any disqualification by imputation, abuse the expectations of jurors, and has the general tendency to impair rather than promote confidence in the integrity of the judicial system.

The foregoing reasons, which weigh against finding an adverse impact on the integrity of the judicial system, reinforce our conclusion that plaintiffs have failed to show by clear and convincing evidence that any of the Debevoise lawyers' testimony would be so prejudicial to MetLife that the integrity of the judicial system would be threatened. Consequently, the witness-advocate rule does not justify disqualification in this case.

## CONCLUSION

Based on the foregoing analysis, we reverse the disqualification order and reinstate Debevoise as trial counsel to MetLife in the underlying securities litigation.

46