FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 0 8 2009 ★

BROOKLYN OFFICE

09-3716-cv
In re MetLife Demutualization Litigation

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: September 3, 2009    Decided: September 29, 2009)

Docket No. 09-3716-cv

- - - - - - - - - - - - - - - - - - - -x

DARREN F. MURRAY, MARY A. DEVITO, KEVIN L. HYMS, HARRY S.
PURNELL III, KATHY VANDERVEUR, and MICHAEL A. GIANNATTASIO,

Plaintiffs-Appellees,

– v.–

METROPOLITAN LIFE INSURANCE COMPANY and METLIFE, INC.,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, WESLEY and HALL,
               Circuit Judges.

Defendants-appellants Metropolitan Life Insurance

Company and MetLife, Inc. appeal an order of the United

States District Court for the Eastern District of New York

(Platt, J.), disqualifying its counsel Debevoise & Plimpton

LLP shortly before trial. On September 22, 2009, this Court

reversed the disqualification order, with opinion to follow.

This is that opinion.



TERESA WYNN ROSEBOROUGH, KEVIN
S. FINNEGAN, DUNCAN J. LOGAN,
Metropolitan Life Insurance
Company, New York, New York;
MICHAEL B. MUKASEY, MARY JO
WHITE, BRUCE E. YANNETT, MARK P.
GOODMAN, Debevoise & Plimpton
LLP, New York, New York, <u>for</u>
<u>Appellants</u>.

JARED B. STAMELL, Stamell &
Schager, LLP, New York, New York
(John C. Crow, David K. Bowles,
Robert A. Skirnick, and Samantha
H. Evans, on the brief), <u>for</u>
<u>Appellees</u>.

DENNIS JACOBS, <u>Chief Judge</u>:

Plaintiffs in this class action were policyholders of

Metropolitan Life Insurance Company when it was a mutual

insurance company.  They complain that they were misled and

shortchanged in the transaction by which the company

demutualized in 2000.  Nine years after the action was

commenced and five weeks before trial was scheduled to

begin, plaintiffs moved to disqualify the lead counsel for

Metropolitan Life Insurance Company and MetLife, Inc.

("MetLife"), Debevoise & Plimpton LLP ("Debevoise").  The

grounds alleged related to that firm's representation of

MetLife in the underlying demutualization.  The United

2

1    States District Court for the Eastern District of New York

2    (Platt, J.) granted the motion to disqualify on September 1;

3    the district court then stayed its order and immediately

4    certified the issue to this Court pursuant to 28 U.S.C.

5    § 1292(b).  We accepted the certification on September 2,

6    and on September 3 we heard oral argument.  After time

7    allotted for additional briefing, a short delay caused by

8    the recusal of two judges, and the observance of national

9    and religious holidays, we reversed the disqualification by

10   order dated September 22, with opinion to follow.  This is

11   that opinion.

12       The district court disqualified Debevoise on the ground

13   that its representation of MetLife in the 2000

14   demutualization made it counsel to the policyholders as

15   well.  On appeal, plaintiffs urge affirmance on that ground,

16   and also on the independent ground that the witness-advocate

17   rule requires disqualification because four Debevoise

18   lawyers who worked on the demutualization will give

19   testimony adverse to MetLife at trial.

20       We conclude that (i) Debevoise did not have an

1   attorney-client relationship with the policyholders by

2   virtue of its representation of MetLife; and (ii) plaintiffs

3   have failed to establish that the purported violation of the

4   witness-advocate rule in this case would warrant

5   disqualification.  Accordingly, we reverse.

6                                    I

7         In 1915, MetLife converted from a stock life insurance

8   company to a mutual insurance company.  On April 7, 2000,

9   MetLife completed a months-long process of demutualization

10  back to a stock insurance company.  Debevoise served as

11  MetLife's corporate counsel in that transaction.

12        On April 18, 2000, plaintiffs filed this class action

13  lawsuit in the Eastern District of New York, alleging that

14  MetLife violated federal securities laws by misrepresenting

15  or altogether omitting certain information from the

16  materials provided to its policyholders during the

17  demutualization process.  In June 2007, MetLife invoked the

18  attorney-client privilege to prevent plaintiffs' discovery

19  of particular communications between MetLife and its in-

20  house and outside counsel.  The district court denied a

4

1   protective order on the ground that the plaintiff

2   policyholders were the owners of the mutual company and were

3   therefore clients of Debevoise during the demutualization.

4       Following discovery and the usual preliminaries, the

5   trial was set to begin on September 8, 2009.  When last-

6   minute settlement negotiations failed, plaintiffs moved to

7   disqualify Debevoise on July 31, 2009--more than nine years

8   after the action was commenced, more than two years after

9   the court ruled that plaintiffs were clients of Debevoise,

10  and five weeks before trial.  Plaintiffs argued that

11  disqualification was appropriate for the same reason

12  articulated by the district court to support its 2007

13  discovery ruling: Debevoise had been counsel to plaintiffs

14  in the demutualization and cannot now jump sides to become

15  adverse to plaintiffs at trial.  Plaintiffs also argued that

16  disqualification was required by the witness-advocate rule,

17  because four Debevoise lawyers are scheduled to testify

18  about disclosures and documents related to the

19  demutualization.

20      MetLife's response invoked the doctrine of laches;

5

```
 1    The Court:    You did represent the policyholders,
 2                  because there was--they were the
 3                  corporation.  That's the problem.
 4                  The problem was that all of the
 5                  former or the policyholders were the
 6                  owners of the corporation.  So you
 7                  represented them and the track if
 8                  you will because there was no--they
 9                  were your clients.
10
```

11      Having granted the motion, the court immediately stayed

12   its order and certified the following question to this

13   Court: "Should Debevoise & Plimpton be disqualified from

14   representing MetLife in this case based on a conflict of

15   interest[?]"  We accepted certification and now reverse.

**II**

17      Plaintiffs argue that the district court's 2007

18   discovery ruling (that plaintiffs are clients of Debevoise)

19   is now law of the case, which we lack jurisdiction to

20   review.  We conclude, first, that we have jurisdiction to

21   consider the question; and second, that under New York law,

22   the policyholders of a mutual insurance company are not the

23   clients of that company's outside counsel.  New York law is

24   applicable to this case because Metropolitan Life Insurance

25   Company was a mutual life insurance company that was

26   reorganized into a stock insurance company under New York

27   law, with its principal place of business in New York, doing

7

1   business in all fifty states.

2        Under 28 U.S.C. § 1292(b), a district court can certify

3   a question for interlocutory appeal if the issue "involves a

4   controlling question of law as to which there is substantial

5   ground for difference of opinion and [if] an immediate

6   appeal from the order may materially advance the ultimate

7   termination of the litigation."  In ruling on a certified

8   question of law, "we have the discretion to entertain an

9   appeal of another ruling of the district court if the two

10  rulings were 'inextricably intertwined' or if 'review of the

11  [latter] decision was necessary to ensure meaningful review

12  of the former.'"  Ross v. Am. Express Co., 547 F.3d 137, 142

13  (2d Cir. 2008) (quoting In re Methyl Tertiary Butyl Ether

14  ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 122 (2d Cir.

15  2007) (quoting Swint v. Chambers County Comm'n, 514 U.S. 35,

16  51 (1995))); see also Golino v. New Haven, 950 F.2d 864, 868

17  (2d Cir. 1991) ("[W]here we have jurisdiction to consider

18  some questions on appeal, we may exercise our discretion to

19  take pendent jurisdiction over related questions.").

20       The district court's 2007 and 2009 decisions are

21  clearly related.  In 2007, the court determined that prior

22  to demutualization, "MetLife's policyholders were the

8

1   clients for MetLife's in-house and outside counsel, because

2   they were MetLife's beneficiaries and the beneficiaries of

3   MetLife counsel's advice." In re MetLife Demutualization

4   Litig., 495 F. Supp. 2d 310, 314 (E.D.N.Y. 2007).  The 2009

5   ruling explained similarly that "the problem, and

6   Debevoise's problem, is they represented the policyholders

7   up until the day on the closing when they walked over across

8   the aisle and started representing the stockholders, if you

9   will, and [ ] the corporation more exactly . . . ." Because

10  these two rulings are "inextricably intertwined," we have

11  jurisdiction to decide whether plaintiffs were, in fact,

12  clients of Debevoise.

13                              III

14      We conclude that plaintiffs were not clients of

15  Debevoise.  It is well-settled that outside counsel to a

16  corporation represents the *corporation*, not its shareholders

17  or other constituents.  Evans v. Artek Sys. Corp., 715 F.2d

18  788, 792 (2d Cir. 1983) ("A 'corporate attorney'--whether an

19  in-house lawyer or a law firm that serves as counsel to the

20  company--owes a duty to act in accordance with the interests

21  of the corporate entity itself.  [The] client is the

                                9

1    corporation.").  This rule is entirely consonant with Rule

2    1.13 of the New York Rules of Professional Conduct, N.Y. R.

3    Prof'l Conduct § 1.13(a) ("[A] lawyer employed or retained

4    by an organization . . . is the lawyer for the organization

5    and not for any of the constituents."), and with the

6    Restatement (Third) of the Rule Governing Lawyers, § 96 cmt.

7    b (explaining that a lawyer retained by a corporation has an

8    attorney-client relationship with the corporation, but the

9    lawyer "does not thereby also form a client-lawyer

10   relationship with all or any individuals employed by it or

11   who direct its operations or who have an ownership or other

12   beneficial interest in it, such as shareholders").

13       These principles apply as well to a mutual insurance

14   company.  Under New York law, "[a] mutual insurance company

15   is a cooperative enterprise in which the policyholders

16   constitute the members for whose benefit the company is

17   organized, maintained and operated."  <u>Fid. & Cas. Co. of</u>

18   <u>N.Y. v. Metro. Life Ins. Co.</u>, 248 N.Y.S.2d 559, 565 (N.Y.

19   Sup. Ct. 1963).  But a policyholder, "even in a mutual

20   company, [is] in no sense a partner of the corporation which

21   issued the policy, and . . . the relation between the

22   policy-holder and the company [is] one of contract, measured

10

1  by the terms of the policy." <u>Uhlman v. N.Y. Life Ins. Co.</u>,

2  17 N.E. 363, 365 (N.Y. 1888).

3      The district court's 2007 decision reasoned that

4  plaintiffs were clients of Debevoise during the

5  demutualization "because they were MetLife's beneficiaries

6  and the beneficiaries of MetLife counsel's advice." <u>In re</u>

7  <u>MetLife Demutualization Litig.</u>, 495 F. Supp. 2d 310, 314 (2d

8  Cir. 2007).  But this does not distinguish a mutual

9  insurance company from any other corporation.

10     Not every beneficiary of a lawyer's advice is deemed a

11  client.  <u>See</u> N.Y. R. Prof'l Conduct 2.3(a) ("A lawyer may

12  provide an evaluation of a matter affecting a client for the

13  use of *someone other than the client* if the lawyer

14  reasonably believes that making the evaluation is compatible

15  with other aspects of the lawyer's relationship with the

16  client.") (emphasis added); <u>see also</u> <u>Fiala v. Metro. Life</u>

17  <u>Ins. Co.</u>, 6 A.D.3d 320, 322, 776 N.Y.S.2d 29, 32 (1st Dep't

18  2004) ("[A]n insurance company does not owe its policyholder

19  a common-law fiduciary duty except when it is called upon to

20  defend its insured."); N.Y. State Bar Ass'n, Comm. on Prof'l

21  Ethics, Op. No. 477 (1977) (explaining that the lawyer for

22  the executor of an estate need not provide substantive legal

11

1  advice to potential beneficiaries because doing so would

2  violate the lawyer's duty to provide undivided loyalty to

3  his client, the executor).

4      In light of these principles, and without any

5  extraordinary circumstances raised by the parties, we

6  conclude that the policyholders in this case were not

7  clients of Debevoise.

8                              **IV**

9      Plaintiffs make the separate argument that

10  disqualification of Debevoise is proper by virtue of the

11  witness-advocate rule set out in Rule 3.7 of the New York

12  Rules of Professional Conduct.  Subsection (a) of the Rule

13  provides, with certain exceptions, that "[a] lawyer shall

14  not act as an advocate before a tribunal in a matter in

15  which the lawyer is likely to be a witness on a significant

16  issue of fact."  N.Y. R. Prof'l Conduct § 3.7(a).

17  Subsection (b) is broader, as it addresses imputation: "A

18  lawyer may not act as an advocate before a tribunal in a

19  matter if . . . another lawyer in the lawyer's firm is

20  likely to be called as a witness on a significant issue

21  other than on behalf of the client, and it is apparent that

22  the testimony may be prejudicial to the client."  See N.Y.

12

1    R. Prof'l Conduct § 3.7(b)(1).

2        Rule 3.7 lends itself to opportunistic abuse.  "Because

3    courts must guard against the tactical use of motions to

4    disqualify counsel, they are subject to fairly strict

5    scrutiny, particularly motions" under the witness-advocate

6    rule.  Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989).

7    The movant, therefore, "bears the burden of demonstrating

8    specifically how and as to what issues in the case the

9    prejudice may occur and that the likelihood of prejudice

10   occurring [to the witness-advocate's client] is

11   substantial."  Id.  "Prejudice" in this context means

12   testimony that is "sufficiently adverse to the factual

13   assertions or account of events offered on behalf of the

14   client, such that the bar or the client might have an

15   interest in the lawyer's independence in discrediting that

16   testimony."  Id.

17       As this definition suggests, the showing of prejudice

18   is required as means of proving the ultimate reason for

19   disqualification: harm to the integrity of the judicial

20   system.  We have identified four risks that Rule 3.7(a) is

21   designed to alleviate: (1) the lawyer might appear to vouch

22   for his own credibility; (2) the lawyer's testimony might

13

1   place opposing counsel in a difficult position when she has

2   to cross-examine her lawyer-adversary and attempt to impeach

3   his credibility; (3) some may fear that the testifying

4   attorney is distorting the truth as a result of bias in

5   favor of his client; and (4) when an individual assumes the

6   role of advocate and witness both, the line between argument

7   and evidence may be blurred, and the jury confused. <u>Ramey</u>

8   <u>v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers</u>,

9   378 F.3d 269, 282-83 (2d Cir. 2004) (internal citations and

10  alterations omitted). These concerns matter because, if

11  they materialize, they could undermine the integrity of the

12  judicial process. <u>See Hempstead Video, Inc. v. Inc. Vill.</u>

13  <u>of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005) ("The

14  authority of federal courts to disqualify attorneys derives

15  from their inherent power to preserve the integrity of the

16  adversary process.") (internal quotation marks omitted); <u>see</u>

17  <u>also id.</u> (emphasizing "the need to maintain the highest

18  standards of the profession") (internal quotation marks

19  omitted).

20      In imputation cases (Rule 3.7(b)), the witness is not

21  acting as trial counsel; these concerns are therefore

22  "absent or, at least, greatly reduced." <u>Ramey</u>, 378 F.3d at

14

1    283 (internal quotation marks omitted); see also A.B.A.

2    Model Rules of Prof'l Conduct § 3.7 cmt. 5 ("Because the

3    tribunal is not likely to be misled when a lawyer acts as

4    advocate in a trial in which another lawyer in the lawyer's

5    firm will testify as a necessary witness, [Model Rule

6    3.7(b)] permits the lawyer to do so except in situations

7    involving a conflict of interest."). Accordingly,

8    disqualification by imputation should be ordered sparingly,

9    see Kubin v. Miller, 801 F. Supp. 1101, 1114 (S.D.N.Y.

10   1992), and only when the concerns motivating the rule are at

11   their most acute.

12        Therefore, we now hold that a law firm can be

13   disqualified by imputation only if the movant proves by

14   clear and convincing evidence that [A] the witness will

15   provide testimony prejudicial to the client, and [B] the

16   integrity of the judicial system will suffer as a result.

17   This new formulation is consistent with our prior efforts to

18   limit the tactical misuse of the witness-advocate rule.

19   See, e.g., Lamborn, 873 F.2d at 531.

20                              **A**

21        In this case, four Debevoise lawyers are likely to be

22   called to testify at trial.  Three of them are transactional

                                15

1    lawyers who are not and will not be trial advocates; the

2    fourth, a litigator, is a member of the trial team, but will

3    not act as an advocate before the jury.  None of these

4    witnesses, then, is properly considered trial counsel for

5    purposes of Rule 3.7(a).  See Ramey, 378 F.3d at 283 ("The

6    advocate-witness rule applies, first and foremost, where the

7    attorney representing the client before a jury seeks to

8    serve as a fact witness in that very proceeding.") (first

9    emphasis added).  If the rule applies here at all,

10   therefore, it will be subsection (b) (imputation), and

11   plaintiffs do not contend otherwise.

12                              B

13       The parties dispute whether the Debevoise lawyer-

14   witnesses will give testimony so prejudicial to MetLife that

15   the integrity of the judicial system may be threatened and

16   disqualification warranted.  Our review of the record

17   suggests that the Debevoise witnesses will do little more

18   than authenticate documents and confirm facts that do not

19   appear to be in dispute.  For example, plaintiffs state that

20   they intend to use the testimony of Wolcott Dunham, a

21   Debevoise transactional lawyer, to show that MetLife

22   "intentionally or recklessly omitted material facts from the

                               16

1    prospectus."  A review of the cited deposition excerpts,

2    however, reveals only that Dunham testified that it was

3    inaccurate to characterize a policyholder's interest in the

4    company as "ownership."  MetLife argues that this testimony

5    is not adverse to its position in this litigation.

6    Plaintiffs assert that MetLife is wrong, but do not explain

7    why.

8         Plaintiffs contend that they will use the testimony of

9    James Scoville, another Debevoise transactional lawyer, to

10   establish that "MetLife revealed that a significant portion

11   of the value of the Demutualization that it had said was set

12   aside for policyholders was in fact earmarked for new

13   stockholders."  A review of the cited deposition testimony,

14   however, shows that Scoville testified only to what various

15   written documents clearly state.  It appears that at most

16   Scoville will be asked to authenticate those documents.  And

17   the same is true for the remaining witnesses.

18        We doubt that, on this record, the testimony at issue

19   is sufficiently prejudicial to MetLife to warrant

20   disqualification.  We recognize, however, that we are not in

21   a good position to answer this question; and there is no

22   finding by the district court on this issue of fact.

17

1    Even if we assume that some portion of the Debevoise

2    lawyers' testimony will be adverse to MetLife (when

3    considered in a context that we cannot fully evaluate or

4    appreciate on this interlocutory appeal), plaintiffs have

5    failed to establish the clear and convincing evidence of

6    prejudice necessary to justify the extreme remedy of

7    disqualification by imputation.

8        First (as noted above), the concerns motivating Rule

9    3.7 are attenuated where, as here, the witness-"advocate" is

10   *not* someone who will be trying the case to the jury.

11   Therefore, plaintiffs seeking disqualification under Rule

12   3.7(b) must make a considerably higher showing of prejudice

13   than would be required under Rule 3.7(a).  From the outset,

14   then, we are inclined to conclude that disqualification is

15   inappropriate in this case.

16       Second, MetLife's desire to keep Debevoise as its trial

17   counsel, plainly evidenced by MetLife's position in this

18   appeal, militates strongly against a finding of prejudice.

19   This appeal has been prosecuted in large part by MetLife's

20   in-house lawyers, who have argued to this Court that

21   disqualification was improper and that Debevoise should be

22   reinstated, notwithstanding that Debevoise non-advocate

18