U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE METLIFE DEMUTUALIZATION
LITIGATION

Civil Case No.
00 CV 2258 (JBW)

NEW YORK STATE SUPREME COURT
NEW YORK COUNTY

EUGENIA J. FIALA, ET AL., v.
METROPOLITAN LIFE INSURANCE
COMPANY, ET AL.

Civil Case No.
601181/2000 (Kornreich)

### AFFIDAVIT OF IAN T. STOLL, ESQ. IN SUPPORT OF JOINT PETITIONS BY THE STATE AND FEDERAL PLAINTIFFS FILED ON BEHALF OF LOVELL STEWART HALEBIAN LLP

CITY OF NEW YORK          )
                          )          ss.:
STATE OF NEW YORK         )

I, Ian T. Stoll, being duly sworn, states as follows:

1.      I am a member in good standing of the State Bar of New York and of this Court, and a partner in the law firm of Lovell Stewart Halebian LLP ("Lovell Stewart Halebian").

2.      Lovell Stewart Halebian has been Chairman of the Class Co-lead Counsel for Plaintiffs in the above-captioned State court action.  I have personal knowledge of the facts set forth in this Affidavit and, if called as a witness, I could and would testify to them.

3.      I respectfully submit this Affidavit in support of the Plaintiffs' motions for the final approval of the settlement of the above-captioned class action litigations; for an award of attorneys' fees and reimbursement of expenses; and for compensatory awards to the

representative plaintiffs.  This is a joint motion with the federal plaintiffs in *In re MetLife Demutualization Litigation*, 00-CV-2258 (JBW) (E.D.N.Y.).[1]

## I.    THE SETTLEMENT REPRESENTS A FAIR, REASONABLE AND ADEQUATE COMPROMISE

4.    I have read the rendition of fact assertions, contentions and legal arguments made in Plaintiffs' accompanying "Memorandum of Law In Support of Final Approval of the Settlement, Awarding Attorneys' Fees and Reimbursement of Expenses, And Granting Compensatory Awards to the Representative Plaintiffs," dated December 22, 2009 ("Plaintiffs' Memorandum").

5.    These facts are all true to the best of my knowledge, information and belief.

6.    I respectfully submit that this Court should finally approve the settlement as fair, reasonable, and adequate.  Among other things, Class Counsel were well-informed of the factual and legal issues and well-advised of the potential arguments when they negotiated and entered into the proposed settlement, engaged in arms-length and good faith bargaining, and entered the settlement only after being persuaded to do so by mediator Richard Davis, Esq.  *See*, Affidavit of Christopher Lovell annexed hereto as Ex. B.

---

[1] The federal plaintiffs' submissions are as follows:  (a) Memorandum in Support of Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and the Declaration of Jared B. Stamell in Support of Lead Counsel's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds (and Appendix thereto); (b) Lead Counsel's Joint Application for An Award of Attorneys' Fees and Reimbursement of Expenses, and the Declaration of Jared B. Stamell In Support of Attorneys' Fees and Reimbursement of Expenses ("Stamell Attorneys' Fees and Expenses Declaration"); and (c) the Application of Lead Plaintiffs in the Federal Action for Awards Under the PSLRA, and the Declaration of Jared B. Stamell In Support of Application of Lead Plaintiffs in the Federal Action for Awards under the PSLRA ("Stamell PSLRA Award Declaration"), all dated December 22, 2009, are attached as Exs. A-1 to A-3 hereto.

7.      The litigation has been hard-fought, required substantial effort and resources of Class Counsel and presented significant risks every step of the way. *See*, Appendix A hereto regarding the procedural history.

8.      There was no expectation of a quick settlement of these high or substantial risk claims (as is reflected by the fact that only four State cases were filed). On the contrary, ample evidence has been submitted to establish that Plaintiffs faced high or very substantial risks in developing and prosecuting these claims.

9.      Unlike almost all class actions, this case involved new causes of action under New York Insurance Law § 7312. Such causes of action have not previously been proved.

10.     Recognizing that Class Counsel were sailing into both uncharted and turbulent waters, MetLife, represented by one of the biggest and best law firms in the nation, tried to sink plaintiffs' high risk claims through motions to dismiss, the opposition to class certification, various discovery maneuvers, summary judgment, and multiple other steps too numerous to mention.

11.     However, Class Counsel skillfully navigated through and repelled these maneuvers. In winning every significant litigation battle in this case, Class Counsel submitted detailed and thorough pleadings and papers. This case produced important, ground-breaking precedent including:

    ·   denying the motions for a bond and attorneys' fees under N.Y. Ins. Law § 7312(t)(2).

    ·   reinstating (and creating) the cause of action under N.Y. Ins. Law § 7312. *Fiala, et al. v. Metropolitan Life Ins. Co., et al.*, 6 A.D.3d 320, 776 N.Y.S.2d 29 (1st Dep't 2004).

    ·   certifying a broad litigation class on the new cause of action. *Fiala, et al. v. Metropolitan Life Insurance Co., et al.*, Index No. 601181/00, Memorandum Decision (May 2, 2006) (Sup. Ct. New York County), *aff'd*,

52 A.D.3d 251, 859 N.Y.S.2d 426, 2008 NY Slip Op. 05010 (N.Y. App. Div. 2008).

defeating the renewed motion to dismiss. *Fiala, et al. v. Metropolitan Life Ins. Co., et al.*, Index No. 601181/00, Memorandum Decision (Oct. 11, 2005) (Sup. Ct., New York County).

12.     If Plaintiffs had not won every significant contested motion against excellent defense counsel and successfully marshaled the attorneys, experts and other resources necessary to handle the complexity and magnitude of this case, then there likely would have been receiving no recovery on the causes of action herein.

13.     Working under these high risk conditions, Plaintiffs were required (by Defendants' excellent counsel) to perform enormous amounts of work and deal with extremely complex legal and factual issues in order to obtain disclosure from and prosecute the claims against MetLife.

14.     Although Plaintiffs have (so far) substantially won every significant battle in this hard-fought litigation, Plaintiffs, in my opinion, faced substantial remaining risks that justify this settlement.

### The Risks Of Establishing Liability

15.     There are both legal and factual risks of establishing liability.

16.     Regarding the legal risks, this is the first New York Insurance Law § 7312 cause of action that has been sustained.  While Plaintiffs believe that their theory is grounded in solid and unimpeachable legal precedent, Defendants' excellent counsel would argue that, as a matter of law, Plaintiffs' evidence developed in support of such theory does not establish a fair price.

4

17.     There were numerous factual or evidentiary risks involved in establishing liability.  These risks included, but were not limited to, the proof that the PIB was false, the proof that IPO price was depressed in light of such falsity, the effect of issuing excess shares, etc.

18.     I respectfully submit that this factor strongly favors approval of the proposed settlement.

### The Risks Of Establishing Damages

19.     In order to establish liability, Plaintiffs had to prove the existence of an unfair transaction.  In order to establish damages under the traditional method of assessing damages, Plaintiffs may also have had to undertake a further burden.  Certainly, the Defendants would argue that Plaintiffs had to undertake this burden.  This burden is to establish the amount of the IPO price was less than it otherwise would have been.

20.     Therefore, the risks of establishing damages in this action included all the risks of establishing what an IPO price should have been and may have included the additional risks of establishing the amount of a fair price.  This issue would have invoked a "battle of the experts", the outcome of which simply cannot be predicted.  What is known, is that Plaintiffs would have had the burden of proof to convince the trier of fact as to the reasonable amount of a fair IPO price.

21.     I respectfully submit that these factors and others set forth in Plaintiffs' Memorandum strongly demonstrate the reasonableness of the proposed settlement.

22.     In my opinion, this proposed settlement is definitely within the range of reasonableness in light of the strength of the claim against MetLife compared to what that Defendant agreed to pay.

## II.    THE REQUESTED FEES AND EXPENSES SHOULD BE AWARDED

23.    Class Counsel filed this action and prosecuted these claims solely on a contingent-fee basis, and have been completely at risk that they would not receive any compensation for prosecuting these claims against the Defendants.  Class Counsel have devoted substantial time and resources to this matter, and foregone other legal work in order to work on this matter.

24.    Attached to this Affidavit are the following Declarations of my colleagues attesting to the substantial services that Class Counsel have performed:

·       Barry Weprin (Ex. E-1).

·       Joseph Weiss (Ex. E-2).

·       Jules Brody (Ex. E-3).

·       Paul Rothstein (Ex. E-4).

·       Frank H. Tomlinson (Ex. E-5).

·       Edward W. Cochran (Ex. E-6).

·       Kenneth R. Behrend (Ex. E-7).

·       Leslie Wybiral (Ex. E-8).

25.    Based upon these Declarations, Class Counsel in the State cases attest that they performed 34,874.64 hours of, as yet, uncompensated work which is valued at $17,628,016.20, at the current ordinary non-contingent billing rates for the attorneys and other professionals who performed the work.[2]

---

[2]  The time totals exclude work performed in connection with this fee petition.

26.     Class Counsel request a joint attorneys' fee for the federal and State cases equal to $15,000,000, minus the sum of (a) the reimbursement of expenses to Class Counsel, and (b) the payment of lost wages awarded by this Court and the federal court.

27.     If all expenses are reimbursed ($4,500,000; *see* ¶¶ 33, fn. 3, 46; Ex. C-2, *infra*) and all lost wages are paid ($62,310, *see* ¶ 67 *infra;* Stamell PSLRA Award Declaration, ¶ 1), then the amount of the joint attorneys fee will be approximately $10,500,000.  This represents of 21% of the settlement fund.  This represents a negative risk multiplier of approximately 0.25.

28.     **Standing At The Bar.**  With regard to standing at the bar, this Court has previously held that "the four proposed Class counsel have each demonstrated that they are competent, skilled, and experienced in class action litigation." *Fiala, et al. v. Metropolitan Life Insurance Co., et al.*, Index No. 601181/00, Memorandum Decision (May 2, 2006) at 13 (Sup. Ct., New York County).

29.     To provide further evidentiary support for "standing at the bar", each Class Counsel's law firm has submitted a firm resume demonstrating the truly extensive class action and financial litigation experience which the Class Counsel brought to bear in these actions.  The firm resumes of Class Counsel are annexed as Ex. D-3 and within Exs. E-1 to E-8 hereto.

30.     As demonstrated by these firm resumes, the firms and attorneys who represented Plaintiffs in this action have extensive experience in complex class action litigation.  The attorneys actively working in the case had decades of experience in the prosecution of complex class actions and other investor protection litigation.

31.     In these circumstances, I respectfully submit that the hourly fees that my colleagues have attested to as their standard fees, are reasonable and may be approved. (Again, because the fee is requested on a percentage of the fund basis, the lodestar analysis is not necessary).

**The Negative Risk Multiplier Amply Supports The Requested Fee**

32.     The schedule of the lodestar of all Class Counsel in the State cases is attached hereto as Ex. C-1.

33.     Based on the lodestar of $17,628,346.25 and the federal plaintiffs' Class Counsel's lodestar of $25,214,472.00,[3] the total lodestar is $42,842,818.25. Thus, requested fee of approximately $10,500,000 represents a negative risk multiplier of approximately 0.25.

34.     Courts apply a risk multiplier to the lodestar to take account of such factors as: (i) the contingent nature of the fee and the consequent risk of non-payment; (ii) the risks of the case, *e.g.*, the likelihood of success, viewed as of the time of filing of suit; (iii) the quality of representation; (iv) the magnitude and complexity of the action; and (v) various other factors.

**The Requested Fee Is Reasonable In Light Of All of the Circumstances**

35.     Class Counsel undertook this complex and difficult litigation on a contingent basis. Like most class actions, success and payment for Class Counsel's efforts were extremely uncertain from the beginning.

36.     Exacerbating the high or substantial risks which Class Counsel faced herein was the extraordinary amount of professional work which the substantial magnitude and complexity of this case required. As suggested by the nine-year length of this case, the

---

[3] *See,* Stamell Attorneys' Fees and Expenses Declaration, ¶15 (attached as Ex. A-2 hereto). The federal plaintiffs Class Counsel's expenses total $3,689,122.95. *Id.*, at ¶16.

volumes of documents and information which Class Counsel had to master and analyze in this case were substantial.

37.    Recognizing the many substantial risks which Class Counsel faced and hoping to ensnare Class Counsel in at least one of these risks, MetLife refused to offer to settle these claims until after Class Counsel had successfully

- defeated the motions to dismiss;

- engaged in significant discovery motion practice;

- taken substantial discovery;

- prepared and submitted cogently-argued and painstakingly supported class certification papers;

- certified the Class;

- upheld such certification on appeal;

- completed disclosure;

- submitted expert disclosure;

- defended depositions of Plaintiffs' experts and the named Plaintiffs' depositions;

- deposed Defendants' experts;

- notified the Class of the pendency of the case; and

- submitted voluminous papers in opposition to summary judgment.

38.    I respectfully submit that there are at least five important facts in the evidentiary record which provide strong support for the exercise of this Court's discretion to grant the requested fee.

39.    First, Class Counsel have won every significant motion in this hard-fought case.

40.     Second, the fee represents a negative multiplier on the lodestar.  Counsel could request a 33 1/3% fee plus expenses which would have resulted in a significantly less negative multiplier.  But Class Counsel but have not done so.

41.     Third, in the latter regard, a standard contingent fee negotiated at the outset of commercial litigation has, in my experience, been 33 1/3%-40%.  *Compare*:

> The record demonstrates that, in connection with their claims against PSI and the PSI Settling Defendants, investors entered retainer agreements with private counsel which provided for a contingent fee ranging between 33 1/3 and 40% of the amounts recovered.

*In re Prudential*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996).

42.     In light of the 33 1/3 – 40% contingent fee charge for standard litigation, Class Counsel respectfully submit that a twenty-one percent fee is reasonable, fair and appropriate for the non-standard, extremely complex and extraordinary litigation involved here.

43.     Fourth, most important, I respectfully submit that the record also overwhelmingly demonstrates three interrelated facts: (1) Class Counsel's efforts in this action were undertaken in prosecuting high or substantial risk claims; (2) the amount of the work that had to be performed in these risky conditions was truly extraordinary; and (3) the complexity of the issues that had to be addressed, simplified and resolved, was much greater than "normal." *Compare, City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

44.     Fifth, in addition to conferring these substantial benefits on the Class members, Class Counsel's skillful efforts in prosecuting these actions to date have had the socially desirable effect of vindicating the important "fairness" provisions of N.Y. Ins. Law § 7312.

45.     I respectfully request that the Court approve the requested fee.

**Reimbursement Of Expenses**

46.     Class Counsel requests payment of $1,344,887.04 in expenses.  Of this, the reimbursement to my firm is $1,179,049.67.  Therefore, I have extensive knowledge of the expenses.  Also, the schedule of all Class Counsel's expenses is attached hereto as Ex. C-2.

47.     From the beginning of the case, Class Counsel were aware that they might not recover any of their expenses and, at the very least, would not recover anything unless the action could be successfully resolved.

48.     Thus, they were motivated to take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case. I believe that the expenses for which Class Counsel seeks payment were reasonably incurred in the prosecution of this action.

49.     Class Counsel have taken several steps to demonstrate the reasonableness of their expenses.  First, each firm has submitted a Declaration attesting to that firm's actual expenses including the amounts of that firm's contribution to the general litigation fund among Class Counsel.  *See*, Declarations of Plaintiffs' Counsel attached hereto as Exs. E-1 to E-8.

50.     Second, I provide below a narrative explanation of the aggregate of the expenses in each of the major or significant expense categories described below.

51.     **Experts**.  (a) In order to prove those elements of the claim as well as causation of an unfair price and the amount of damages, Class Counsel, among other things, consulted extensively with five experts.

(b)  Three of these experts have submitted expert disclosures and given EBTs in this action so far.  These affirmations successfully supported (i) Plaintiffs' successful Class motion, and (ii) Plaintiffs' opposition to class certification.

(c)  The expert affirmations are but one part of the expert work.  In addition to the affirmations, Class Counsel consulted extensively with the various experts to develop the claims, analyze the documents produced, analyze possible interpretations of documents or events, and for many other purposes (including working towards a model of what a fair IPO price would be absent Defendants' alleged omission).

(d)  The sum total of expert expenses through December 22, 2009 is $380,806.50.

(e)  I believe and respectfully submit that the aggregate $380,806.50 in expert expenses is appropriate and should be reimbursed.

52.  **Class Notice.**  The total expended for Class notices is $454,162.83.  Class notice is an obviously necessary expense.

53.  **Legal Research.**  The total expended for legal research is $156,537.90.

54.  **Copying.**  (a)  Another part of discovery was the effort to inspect documents. Defendants' documents were voluminous.

(b)  The total document printing, reproduction, copying and retrieval charges are $102,652.10.  This is the sum of the total of each Class Counsel's document-related expenses.  I respectfully submit that this total is a reasonable amount.

55.  **Disclosure.**  The total expended for court reporters and transcripts of examinations before trial is $67,267.65.

56.  All of the expenses detailed were directly connected to the State and federal claims and were necessarily incurred by Class Counsel for the benefit of the members of the Class.

57.  Finally, reference is made to Class Counsel's affidavits detailing the remaining expenses.

## III.   LOVELL STEWART HALEBIAN LLP'S FEES AND EXPENSES

58.     My firm acted as Chairman of Class Co-Lead Counsel for plaintiffs in *Eugenia J. Fiala, et al., v. Metropolitan Life Insurance Company, et al.* The tasks undertaken by my firm can be summarized as follows:

   a.   2000-2001: In the period 2000-2001, we investigated issues relating to demutualizations, executive compensation and failure to disclose. We researched demutualizations in multiple jurisdictions, directors' fiduciary duties, preemptive and dissenters' rights, Article 9 of the CPLR, TROs, injunctive relief, and related issues in the demutualization context and concerning causes of action for unjust taking without due process. We consulted with experts and consultants. We negotiated a leadership structure and developed case strategy. We drafted and filed complaints. We negotiated a stipulation of confidentiality whereby Plaintiffs would not seek a TRO with respect to the demutualization but Defendants would provide substantial document disclosure; issued subpoenas to MetLife Advisors. We reviewed and analyzed documents produced by Defendants and their Advisers; documents and materials concerning MetLife's IPO. We researched causes of action and prepared and filed the amended consolidated complaint. We researched and briefed motions to dismiss by Defendants, their Advisors and the Superintendent of Insurance.

   b.   2002-2003: In the period 2002-2003, we conducted further investigations regarding demutualizations and related matters, attended conferences before the Court, and prepared and made submissions to the Court regarding various legal developments. We reviewed and analyzed the Court's decision dismissing Plaintiffs' causes of action in their entirety; conducted research regarding appeal of decision. We appealed, briefed and argued before the Appellate Division, First Department, the Supreme Court's dismissal of Plaintiffs' causes of action. We researched, prepared and filed submissions regarding stay and adjournment of MetLife's appeal so that the parties' appeals could be briefed and argued jointly; and Plaintiffs' opposition to MetLife's motion for leave to renew or reargue Defendants' motion to require Plaintiffs to post security for expenses.

   c.   2004-2005: In the period 2004-2005, we reviewed and analyzed the First Department's decision reinstating Plaintiffs' common law fraud cause of action and fairness cause of action under N.Y. Ins. Law § 7312. We prepared and issued document requests and subpoenas, propounded interrogatories and notices to admit; obtained (including after resolving discovery disputes before the referee appointed to supervise disclosure) and reviewed millions of pages of documents from Defendants, their advisers and non-parties; issued EBTs to and deposed several witnesses. We responded to the subpoena by federal plaintiffs for documents produced in State litigation. We consulted with experts and consultants. We researched, drafted and filed Plaintiffs' Second Amended

Consolidated Complaint. We researched and prepared a petition under Article 78 of the CPLR. We researched, briefed and argued Defendants' motion pursuant to CPLR 3211(a)(7) and/or 3024(b) to dismiss Plaintiffs' first and second causes of action and dismissing and/or striking various paragraphs of the Second Amended Complaint. We researched, briefed and argued Plaintiffs' motion for class certification, including Defendants' motion to submit further affidavits and documents in opposition the Plaintiffs' class certification motion after oral argument.

d. 2006-2007: In the period 2006-2007, we researched, drafted and submitted Plaintiffs' opposition to the federal plaintiffs' motion to enjoin Plaintiffs' consolidated action. We prepared and issued document requests and subpoenas, propounded interrogatories and notices to admit; obtained (including after resolving discovery disputes before the referee appointed to supervise disclosure) and reviewed millions of pages of documents from Defendants, their advisers and non-parties; issued EBTs to and deposed several witnesses. We researched, drafted and filed Plaintiffs' Third Amended Consolidated Complaint. We consulted with experts and consultants. We prepared and exchanged expert disclosures and conducted and defended EBTs of the parties' six testifying witnesses. We reviewed and analyzed the Court's decision certifying the Class. We researched, prepared and submitted Plaintiffs' cross-appeal of the Court's denial (in part) of Class certification. We researched, drafted and submitted Plaintiffs-Respondents/Cross-Appellants' response to Defendants appeal from the Order granting (in part) Plaintiffs' motion for class certification.

e. 2008-2009: In the period 2008-2009, we researched, drafted and argued Plaintiffs' opposition to Defendants' motion for summary judgment. We conducted research regarding reliance and other issues relating to class certification; discovery disputes, including motion to compel; and enlarging record on appeal. We researched and drafted Plaintiffs-Respondents/Cross-Appellants reply papers in opposition to Defendants' appeal from the Supreme Court's decision on class certification. We reviewed and considered the First Department's order upholding the Supreme Court's decision on Class certification. We researched and prepared notice to the Class regarding pendency of the action. We prepared for trial. We participated in mediation and settlement conferences. We prepared Plaintiffs' motion for final approval of the settlement.

59. The schedule attached hereto as Exhibit D-1 is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates for each of the foregoing two-year periods.

a. 2000-2001: 7,728.22 hours -- $4,589,835.50.

      b.  2002-2003:   1,187.70 hours --   $660,152.55

      c.  2004-2005:   7,528.40 hours --  $3,343,413.50.

      d.  2006-2007:   5,757.26 hours --  $2,252,299.90.

      e.  2008-2009:   5,010.28 hours --  $2,712,666.40.

60.     For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of work by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

61.     The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit D-1 are the same as the regular current rates charged for their services in non-contingent matters.

62.     The total number of hours expended on this litigation by my firm is 27,211.86 hours. The total lodestar for my firm is $13,558,367.85, consisting of $12,591,666.60 for attorneys' time and $966,700.95 for professional support staff time.

63.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

64.     As detailed in Exhibit D-2, my firm has incurred a total of $1,179,049.67 in un-reimbursed expenses in connection with the prosecution of this litigation.[4]

---

[4] The time totals exclude work performed in connection with this fee petition.

65.     The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

66.     With respect to the standing of counsel in this case, attached hereto as Exhibit D-3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

## IV.     AFFIDAVITS OF CLASS REPRESENTATIVES

67.     Attached to this Affidavit are the affidavits of the following Class representatives in support of their respective applications for a compensatory award for reasonable costs and expenses, including lost wages, in consideration for their services and responsibilities as a representative party in the state court action:

    a.     Eugenia J. Fiala (Ex. F-1) ($2,000);

    b.     Paulette Beliunas (Ex. F-2) ($1,760);

    c.     Theresa Hazen (Ex. F-3) ($1,800);

    d.     Mark D. Smilow (Ex. F-4) ($17,250);

    e.     John Brophy (Ex. F-5) ($10,000);

    f.     Vijay J. Shah (Ex. F-6) ($20,000);

    g.     Ira J. Gelb, M.D. (Ex. F-7) ($2,500); and

    h.     June Gelb (Ex. F-8) ($1,000).

Ian T. Stoll

Sworn to before me this
22nd day of December, 2009

Notary Public

ALICIA ROTHMAN
Notary Public, State of New York
No. 24-4981576
Qualified in Kings County
Commission Expires May 13, 2001
2011

17

# Appendix

## APPENDIX

### 1.   The Original Complaints

1.      Between January and April 2000 various complaints were filed that challenged MetLife's proposed conversion.  *Smilow, et ano. v. Metropolitan Life Ins. Co., et al.*, Index No. 1787/2000 (Sup. Ct. Kings County) (on January 14, 2000);  *Rothstein v. Metropolitan Life Ins. Co., et al.*, Index No. 104827/2000 (Sup. Ct. New York County) (March 10, 2000);  *Meloy v. Metropolitan Life Ins. Co., et al.*, Index No. 601218/2000 (Sup. Ct. New York County) (March 20, 2000);  *Schor v. Metropolitan Life Ins. Co., et al.*, Index No. 106694/2000 (Sup. Ct. New York County) (March 28, 2000);  *Schweinberg v. Metropolitan Life Ins. Co., et al.*, Index No. 106789/2000 (Sup. Ct. New York County) (March 29, 2000);  *Shah, et al. v. Metropolitan Life Insurance Co., et al.*, Index No. 108887/2000 (Sup. Ct. New York County) (hereinafter, "*Shah*") (April 21, 2000).

2.      Among these, Plaintiff Fiala commenced the first action in the New York State Supreme Court, New York County by filing and serving the Summons and Verified Complaint in *Eugenia J. Fiala and Chris Waterson v. Metropolitan Life Insurance Company, Met Life, Inc., Robert H. Benmosche, Curtis H. Barnette, Gerald Clark, Joan Gantz Cooney, Burton A. Dole, Jr., James R. Houghton, Harry P. Kamen, Helene L. Kaplan, Charles M. Leighton, Allen E. Murray, Stewart G. Nagler, John J. Phelan, Jr., Hugh B. Price, Robert G. Schwartz, Ruth J. Simmons, William C. Steere, and Neil D. Levin, as Superintendent of Insurance of the State of New York*, Index No. 00/601181 (Sup. Ct. New York County) (hereinafter, "*Fiala*").

3.      On June 12, 2000, Plaintiffs moved for an order pursuant to CPLR 602(a) consolidating *Rothstein* with *Fiala* and *Meloy* and, on September 28, 2000, the complaints in

*Rothstein, Fiala, Meloy Schor* and *Schweinberg* were consolidated under the *Fiala* index number.

### a.  Initial Disclosures

4.      On March 16, 2000, the parties executed a Stipulation of Confidentiality whereby Plaintiffs would not seek a temporary restraining order with respect to the demutualization transaction, but Defendants would provide substantial document disclosure.  In fact, these disclosures turned out to be in excess of 18,000 pages from Defendants.

5.      On June 10, 2004 and January 11 and 25, 2005, Plaintiffs issued subpoenas to Goldman, Sachs & Co. ("Goldman Sachs") and Credit Suisse First Boston ("CSFB"), MetLife's advisors on the demutualization.

6.      From June 23, 2000 to July 13, 2000, Plaintiffs received tens of thousands of documents produced by Goldman Sachs and CSFB.  Plaintiffs reviewed these documents, researched their causes of action and prepared the amended consolidated complaint.

### b.  The Amended Consolidated Complaint

7.      On August 11, 2000, Plaintiffs filed and served Their Amended Consolidated Complaint ("Amended Consolidated Complaint").  The Amended Consolidated Complaint contained six causes of action against (1) the Officer-Director Defendants for breach of fiduciary duty, (2) the MetLife Defendants for breach of fiduciary duty, (3) the Investment Banking Defendants for aiding and abetting the Individual Defendants' breach of fiduciary duties, (4) the Officer-Director Defendants for negligent misrepresentation or intentional deceit, (5) the MetLife Defendants for negligent misrepresentation or intentional deceit, and (6) the Investment Advisor Defendants for aiding and abetting deceit.

8.      The essence of this pleading was that Defendants had allegedly failed to disclose important facts and that the failure to disclose these facts allegedly caused policyholders to vote to approve the conversion.  *See, supra,* recounting the allegedly material facts that are allegedly omitted from the PIB.

### c.  Defendants' First Motion to Dismiss Is Granted But Their Motion For A Bond For Costs And Attorneys' Fees Is Denied

9.      On October 14, 2000, the Advisor Defendants submitted Their Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Complaint.

10.     On October 19, 2000, Defendants moved to dismiss Amended Consolidated Complaint in its entirety pursuant to New York CPLR 3211(a)(1), (2) and/or (7).

11.     The MetLife Defendants argued that Plaintiffs' actions were an impermissible collateral assault on the Superintendent's supervisory authority; that the complaint alleged no violation of any legal duty because, among other reasons, a mutual insurer owes no fiduciary duty to its policyholders.  Defendants further argued that the demutualization plan was approved by the full board of directors of MetLife and the complaint pled no omissions of material fact from the policyholders' informational materials.

12.     The Superintendent argued that the action was improperly brought as one for declaratory judgment rather than as a CPLR Article 78 proceeding.

13.     The Advisor Defendants argued that Plaintiffs lacked standing and failed to allege facts sufficient to show their actual knowledge of, or substantial assistance to MetLife's claimed wrongdoing.

14.     On January 11, 2001, Plaintiffs responded to Defendants' motion by submitting their 64-page Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions to

Dismiss which was accompanied by the Affidavit of Michael P. Reynolds, Esq., sworn January 11, 2001, the Affidavit of Dr. Craig Pirrong, sworn January 8, 2001, and a compendium of unreported cases.

15.     Plaintiffs argued that they pled a viable cause of action for fraud because Defendants' arguments that the allegations were wrong violated the standards governing the motion; for intentional or negligent misstatement based upon facts which the Superintendents' limited order neither mentioned nor ruled upon; and breach of fiduciary and other duties to policyholders under the common law and New York statutory law.[1]

16.     On March 16, 2001, Defendants submitted the MetLife Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss.  Metlife Defendants' Reply Memorandum was accompanied on March 16, 2001 by Reply Affidavits in Further Support of Their Motion to Dismiss (namely, the Affidavits of Neil D. Levin, Superintendent of Insurance of the State of New York, sworn February 16, 2001, of Joseph A. Reali, sworn March 15, 2001, and of Carl Micarelli, sworn March 16, 2001).  Defendants subsequently submitted the Supplemental Affidavit of Joseph A. Reali, sworn April 18, 2001.

17.     On March 16, 2001, the Advisor Defendants submitted their Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiffs' Amended Consolidated Complaint.

---

[1] Plaintiffs also argued that the business judgment rule did not apply to Defendants' discriminatory acts, frauds, and omissions, that there was no shareholder ratification of Defendants' acts and omissions;  that Plaintiffs had standing to sue for Defendants' breach of fiduciary duty under the common law and implied statutory law;  that the New York State Legislature did not provide the Superintendent with any jurisdiction or power to hear or decide Plaintiffs' money damages claims for breach of fiduciary duty and misstatement;  that Plaintiffs' causes of action did not constitute a collateral attack on the Superintendent's regulatory approval of MetLife's conversion;  and that MetLife's Advisors knowing and substantially assisted the Individual Defendants' unlawful conduct and proximately caused damages to the policyholders.

18.     On May 7, 2001, Defendants submitted the Reply Affirmation of Bruce E. Yanett in Further Support of MetLife Defendants' Motion to Dismiss.

19.     On July 9, 2001, Plaintiffs submitted their Corrected Plaintiffs' Proposed Surreply Memorandum and Memorandum in Support of Service of Plaintiffs' Surreply Memorandum in Further Opposition to Defendants' Motion to Dismiss.[2]

20.     On June 12, 2001, Plaintiffs submitted their letter responding to Defendants' letter dated May 23, 2001, regarding supplemental matters (specifically, the Credit Suisse fairness opinion; the Supreme Court of Iowa's decision in *Reiff v. Allied Mutual Ins. Co.*, 2001 WL 578222 (Iowa Sup. May 31, 2001); and the decision in *Chatlos v. The MONY Life Ins. Co.*, Index No. 106569/00 (Sup. Ct. New York County)(filed April 25, 2001).

21.     On July 13, 2001, Defendants submitted their Affidavit in Opposition to Plaintiffs' Motion for Permission to Submit Surreply Memorandum and Surreply Affidavit.

22.     On July 27, 2001, Plaintiffs submitted their Reply Affidavit in Support of Plaintiffs' Motions for Permission to Submit Surreply Papers.

23.     After oral argument had been held, the Court on February 21, 2003 dismissed Plaintiffs' causes of action in their entirety.   *Shah v. Metropolitan Life Ins. Co., et al.*, 2003 WL 728869 *18 (Sup. Ct., New York County 2003).[3]

---

[2] Plaintiffs also submitted the Supplemental Affidavit of Craig Pirrong in Further Opposition to Defendants' Motions to Dismiss, sworn June 26, 2001.

[3] On September 25, 2000, Defendants had also submitted their Memorandum of Law In Support of Metropolitan Life Insurance Company for Security for Reasonable Expenses pursuant to CPLR 7312(t)(2) and the accompanying Affirmation of Colby A. Smith. Defendants filed a similar motion in *Shah*.

On November 3, 2000, Plaintiffs responded to Defendants' motion by submitting their seven-page Memorandum of Law in Opposition to MetLife's Motion for Security for Expenses.  Plaintiffs' memorandum was accompanied by the Affidavit of Christopher Lovell in Opposition to MetLife's Motion for Security for Expenses, dated November 3, 2000; the

### d. **Plaintiffs' Appeal Reinstates The Fraud And New York Insurance Law § 7312 Causes of Action**

24.     On April 16, 2003, the *Fiala* and *Shah* plaintiffs filed notices of appeal to the Appellate Division of the Supreme Court, First Division, from the Supreme Court's decision dated February 21, 2003.

25.     On April 21, 2003, Defendants filed a Notice of Appeal of Defendant Metropolitan Life Insurance Company from so much of the February 21, 2003 Order of the Court denying MetLife's motion for security for fees and expenses in the *Fiala* and *Shah* actions.

26.     On September 23, 2003, Defendants submitted separate Briefs for Defendant-Appellant in the Appellate Division, First Department in both the *Fiala* and *Shah* actions.

27.     On September 24, 2003, MetLife moved for a stay to prevent Plaintiffs-Appellants from filing their appellate briefs.

28.     On October 17, 2003, Plaintiffs cross-moved to stay and adjourn MetLife's appeal so that the parties' appeals could be brief and argued jointly.[4]

---

Affidavit of Dwight Bartlett, sworn November 3, 2000; and the Affirmation of Hendrik S. Houthakker, dated November 3, 2000.

On November 15, 2000, Defendants had submitted their Reply Memorandum of Law in Further Support of Motion of Metropolitan Life Insurance Company for Security for Reasonable Expenses and the accompanying Reply Affirmation of Colby Smith.

On February 21, 2003, the Court denied Defendants' motions. *Shah v. Metropolitan Life Ins. Co., et al.*, 2003 WL 728869 *18 (Sup. Ct., New York County).

Plaintiffs submitted the Affidavit of Jody R. Krisiloff in Opposition to MetLife's Motion for Leave to renew or Re-Argue its Motion for Security, sworn June 2, 2003.

On November 20, 2003, the Court denied Defendants' Motions for Leave to Renew and/or Reargue Defendants' Motion to Require Plaintiffs' to Post Security for Expenses. Memorandum Decision at 5.

[4] On September 12, 2003, Defendants had submitted the Record on Appeal with respect to their appeal from the Order denying their motion for security for expenses. The *Fiala* Plaintiffs-Appellants moved for an order enlarging the record on appeal to include the Affidavits of plaintiffs George and Mildred Kresovich, and Paul and Theresa Hazen.   On

29.     On November 10, 2003, the *Fiala* and *Shah* plaintiffs perfected their appeal by filing a 29-page Brief for Plaintiffs-Appellants in Action No.1 (*Shah*), and a 66-page Brief for Plaintiffs-Appellants in Action No. 2 (*Fiala*).

30.     On December 10, 2003, Defendants responded by filing the Brief for Defendants-Respondents Metropolitan Life Insurance Company, *Et Al.* in Action Nos. 1 and 2 (*Fiala* and *Shah*).

31.     On December 10, 2003, Plaintiffs submitted their 32-page Brief for Plaintiffs-Respondents.

32.     On December 26, 2003, Defendants submitted the Reply Brief for Defendant-Appellant.

33.     On December 26, 2003, Plaintiffs submitted their 17-page Brief for Plaintiffs-Respondents in Action No.1 (*Shah*), and a 23-page appeal Brief for Plaintiffs-Appellants in Action No. 2 (*Fiala*).

34.     After oral argument had been held, the Appellate Division, First Department, on April 27, 2004, reversed the decision of the Supreme Court. *Fiala, et al. v. Metropolitan Life Ins. Co., et al.*, 6 A.D.3d 320, 776 N.Y.S.2d 29 (1st Dep't 2004).

35.     The First Department reinstated Plaintiffs-Respondents' fraud cause of action primarily to the extent that it found that

> the Fiala plaintiffs' claim that the plan of the MetLife and individual defendants to buy back MetLife stock after the IPO had taken place should have been disclosed in the Policyholder Information Booklet (PIB) was improperly dismissed at this stage on the ground that disclosure was not required because the buy-back plan was insufficiently uncertain at the time of the PIB.  It is apparent, as the court found, that the defendants were

November 5, 2003, Plaintiffs submitted the Reply Affidavit of Jody Krisiloff in Further Support of Plaintiffs-Appellants' Motion to Enlarge the Record.
   Defendants appealed.

> considering a share repurchase and apparent, particularly in light of defendant Goldman Sachs' statement that 'MetLife should indicate in the prospectus that it will implement a stock repurchase program immediately post IPO,' that at the time of the PIB the event was at least reasonably likely to occur.

*Id.*, 6 A.D.3d at 322-323.

36.     The First Department similarly reinstated the fairness cause of action under New York Insurance Law § 7312. *Id.*

### e.   The Second Amended Consolidated Complaint

37.     On June 16, 2004, pursuant to the First Department's *vacatur* (and by stipulation of the parties), Plaintiffs filed their Second Amended Consolidated Complaint.

### f.   Defendants' Second Motion to Dismiss

38.     On July 7, 2004, Defendants moved by Order to Show Cause why and order should not be entered pursuant to New York CPLR 3211(a)(7) and/or 3024(b) dismissing Plaintiffs' first and second causes of action and dismissing and/or striking various paragraphs of the Second Amended Complaint.  In support thereof, Defendants submitted their Memorandum of Law in Support of Defendants' Motion to Dismiss and Strike Portions of the Second Amended Consolidated Complaint pursuant to New York CPLR 3211(a)(7) and/or 3024(b).  The Court entered such Order and scheduled the hearing for September 14, 2004.

39.     Plaintiffs then responded to Defendants' motion by submitting their brief in opposition to Defendants' Motion to Dismiss accompanied by the supporting Affidavit of Jody R. Krisiloff, dated August 11, 2004.

40.     On December 7, 2004, Defendants submitted their Reply Memorandum of Law in Further Support of the MetLife Respondents' and Individual Respondents' Motion to Dismiss the Consolidated Amended Verified Petition.

41.     After oral argument had been held, the Court, on October 11, 2005, denied Defendants' motion to dismiss except to the extent of dismissing the portion of Plaintiffs' conversion law claim based on Defendants' failure to disclose the proposed buy-back plan and certain preferential treatment; dismissing the portion of Plaintiffs' fraud claim based on MetLife Defendants' failure to disclose certain preferential treatment; and striking certain paragraphs, headings of the Second Amended Consolidated Complaint.  *Fiala, et al. v. Metropolitan Life Ins. Co., et al.*, Index No. 601181/00, Memorandum Decision at 10 (Sup. Ct., New York County, Oct. 11, 2005).

42.     The Court sustained the causes of action insofar as Plaintiffs alleged additional bases in their amended conversion law claim.  *Id.*, at 6.  The Court also struck certain allegations as inconsistent with the First Department's Order, and also dismissed the cause of action to the extent that Plaintiffs' claim was based upon Defendants' failure to disclose both the proposed buyback plan and the preferential treatment as constituting a separate and independent violation of the conversion law.  *Id.*, at 7.

43.     On November 9, 2005, Defendants submitted their Answer to the Second Amended Consolidated Complaint.

## g.     The Motion for Class Certification

44.     On August 3, 2004, Plaintiffs submitted their 28-page Memorandum of Law in Support of Plaintiffs' Motion for Class Certification to certify a class pursuant to Article 9 of the New York CPLR on behalf of a "class of persons consisting of all Eligible Policyholders

of MetLife as of September 28, 1999.  The Class includes all persons who purchased and had outstanding, as of September 28, 1999, life insurance, annuity or other policies of MetLife or its subsidiaries."  Plaintiffs' motion for class certification was accompanied by the Affirmation of Jody Krisiloff, Esq.

45.     On November 12, 2004, Defendants filed their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification.  Defendants' opposition motion was accompanied by the supporting Affidavits of Carl Micarelli, Steven M. Contarino and Edmund G. Rakowski.

46.     On December 2, 2004, Plaintiffs submitted their 30-page Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification.

47.     Plaintiffs also submitted the 46-page Affidavit of Jody R. Krisiloff, sworn December 7, 2004.

48.     On December 8, 2004, oral argument on the motion for class certification was argued.

49.     Defendants then moved to supplement their opposition papers.

50.     On January 6, 2005, Defendants submitted a Motion for Order to Show Cause Why Defendants Should Not Be Granted Leave to Submit Supplemental Affidavit in Opposition to Plaintiffs' Motion for Class Certification which was accompanied by the Affidavit of Duncan J. Logan.

51.     On January 18 and 20, 2005, Plaintiffs served the Affidavits of Jody R. Krisiloff, sworn January 18 and 20, 2005, in response to motion by MetLife Defendants to submit further affidavits and/or documents in opposition to Plaintiffs' motion for class certification, attaching the Affidavits of Craig Pirrong, dated January 18 and 20, 2005.

52.     On January 24, 2005, Defendants submitted their Motion for an Order to Show Cause Why Defendants Should Not Be Granted Leave to Submit Supplemental Affidavit in Opposition to Plaintiffs' Motion for Class Certification and the Reply Affirmation of Carl Micarelli in Further Support of Defendants' Motion for Leave to Submit Supplemental Affidavit in Opposition to Plaintiffs' Motion for Class Certification.

53.     On January 21, 2005, the Court held oral argument on Defendants' motion to supplement and denied the motion to supplement the record in its entirety.

54.     On May 2, 2006, the Court issued its Memorandum Decision (and entered an Order on January 31, 2007) on the class certification motion.  *Fiala, et al. v. Metropolitan Life Insurance Co., et al.*, Index No. 601181/00, Memorandum Decision (Sup. Ct. New York County, May 2, 2006).

55.     The Court granted class certification on the claim under CPLR 7312 (Memorandum Decision at pp. 14-15).  The Court certified the following class:  "All Eligible Policyholders of MetLife, who owned or had in force, as of September 28, 1999, life insurance policies, annuity contracts, or accident and health insurance policies issued by MetLife, or other certificates or interests identified in the Plan, excluding defendants, their officers, directors, subsidiaries [and] affiliates."  *Id*.

56.     However, the Court denied class certification of the fraud cause of action on the ground that the element of reliance presented individual issues (Memorandum Decision, pp. 5-9).

### h.     The Third Amended Consolidated Complaint

57.     On February 6, 2006, Plaintiffs filed and served a Third Consolidated Amended Complaint.

### i.      The Cross-Appeals Or Class Certification

58.      On February 9, 2007, Defendants submitted a Notice of Appeal to the First

Department of the Order entered on January 31, 2007 by the Supreme Court.

59.      On January 24, 2005, Defendants submitted their Motion for an Order to Show

Cause Why Defendants Should Not Be Granted Leave to Submit Supplemental Affidavit in

Opposition to Plaintiffs' Motion for Class Certification and the Reply Affirmation of Carl

Micarelli in Further Support of Defendants' Motion for Leave to Submit Supplemental

Affidavit in Opposition to Plaintiffs' Motion for Class Certification.

60.      On December 8, 2004, oral argument on the motion for class certification was

argued.

61.      On January 21, 2005, the Court held oral argument on Defendants' motion to

supplement and denied the motion to supplement the record in its entirety.

62.      On May 2, 2006, the Supreme Court, New York County (Cahn, J.) issued its

Memorandum Decision (and subsequently entered an Order on January 31, 2007) on

Plaintiffs' class certification motion.  *Fiala, et al. v. Metropolitan Life Insurance Co., et al.*,

Index No. 601181/00, Memorandum Decision (Sup. Ct. New York County, May 2, 2006).

63.      The Court granted class certification on Plaintiffs' claim under Section 7312

(Memorandum Decision at pp. 14-15).  The Court certified the following class:  "All Eligible

Policyholders of MetLife, who owned or had in force, as of September 28, 1999, life

insurance policies, annuity contracts, or accident and health insurance policies issued by

MetLife, or other certificates or interests identified in the Plan, excluding defendants, their

officers, directors, subsidiaries [and] affiliates."  However, the Court denied class

12

certification of Plaitiffs' fraud cause of action on the ground that the element of reliance presented individual issues (Memorandum Decision at pp. 5-9).

64.     On February 9, 2007, Defendants submitted a Notice of Appeal to the First Department of the Order entered on January 31, 2007.

65.     On February 27, 2007, Plaintiffs cross-appealed the Court's denial of class certification.

66.     On November 9, 2007, Defendants submitted to the First Department their Brief for Defendants-Appellants/Cross Respondents in support of their appeal from the Order of the Supreme Court, New York County (Herman Cahn, J.), entered on January 31, 2007, which granted in part and denied in part Plaintiffs' motion for class certification.

67.     On February 15, 2008, Plaintiffs filed their 52-page Plaintiffs-Respondents/Cross-Appellants' Memorandum.

68.     On May 5, 2008, Plaintiffs filed their 29-page Reply Brief for Plaintiffs-Cross Appellants.[5]

69.     On June 5, 2008, the First Department upheld the Oorder of class certification the Supreme Court and found that the "named plaintiffs possess an 'adequate understanding of the case . . . and their attorneys clearly possess the requisite 'competence, vigor and

---

[5] On February 28, 2008, Plaintiffs filed the Motion by Plaintiffs-Respondents to Enlarge the Record on Appeal and Cross-Appeal (and to file a supplemental record).  On March 10, 2008, Defendants submitted their Opposition to the Motion by Plaintiffs-Respondents to Enlarge the Record on Appeal and Cross-Appeal accompanied by the Affidavit of Carl Micarelli.  On March 13, 2008, Plaintiffs submitted the Reply Affidavit of Jody Krisiloff in Support of Plaintiffs-Respondents/Cross-Appellants' Motion to Enlarge the Record on Appeal and File Supplemental Record.  On March 25, 2008, the First Department granted the motion of Plaintiffs-Respondents.  Order, M-1464 (Index No. 601181/00) (Affidavit of Professor Craig Pirrong, dated January 19, 2005, included in Supplemental Record).

experience.'"  *Fiala, et al. v. Metropolitan Life Insurance Co., et al.*, 52 A.D.3d 251, 859

N.Y.S.2d 426, 2008 NY Slip Op. 05010 (N.Y. App. Div. 2008).

70.     The First Department also found that the individual issue of reliance rendered

Plaintiffs' common law fraud cause of action inappropriate for class treatment.  *Id.*

71.     Given the standardized and compulsory conduct of each Plaintiff if the group

voted in favor of the proposed conversion, Plaintiffs desired to appeal to the Court of

Appeals the denial of class certification on the fraud cause of action.  But Plaintiffs could not

find a likely avenue of succeeding in having the appeal on an interlocutory basis.

**j.     Continuing Document Requests and Document Disclosures**

72.     Between 2004 and August 30, 2006, Plaintiffs issued further document requests to

MetLife Defendants (the second through eight) and also requests to MetLife's Advisors.

73.     Plaintiffs made numerous motions to compel Defendants to produce documents.

Defendants resisted each of these motions.  Court rulings resolved the motions or the parties

negotiated resolutions of these disputes.

74.     On September 14, 2004 (at oral argument), the Court inquired whether discovery

was moving forward and whether Defendants were producing documents;  Plaintiffs advised

the Court that class certification depositions were taking place but Plaintiffs had not received

any of Defendants' responsive documents.  The Court directed Defendants to begin

producing documents within two weeks on a rolling basis.

75.     On December 8, 2004, the Court appointed Hon. Leslie Lowenstein as referee to

supervise disclosure.  Order of Referral to Special Referee, filed December 21, 2004.  The

Special Referee entered several discovery orders with respect to various discovery-related

disputes between the parties and non-parties.

76.     On November 2, 2005, Plaintiffs submitted their Motion to Review and Vacate the Order of Special Referee Lowenstein, To Permit Certain Disclosure, And For Other Relief.

77.     On November 14, 2005, Plaintiffs submitted the Reply Affidavit of Jody R. Krisiloff, Esq. in Further Support of Motion to Vacate the October 28, 2005 Order of Special Referee Lowenstein, To Permit Certain Disclosure, And For Other Relief.

78.     On November 30, 2005, Defendants submitted their Memorandum of Law in Opposition to Plaintiffs' Motion to Review and Vacate the Order of Special Referee Lowenstein, To Permit Certain Disclosure, And For Other Relief with the accompanying Affidavit of Carl Micarelli, Esq.

79.     On February 15, 2006, Special Referee entered a discovery order ("February 2006 Discovery Order").

80.     Plaintiffs moved to vacate in part the February 2006 Discovery Order.

81.     On July 30, 2006, the Court entered an order, among other things, extending the discovery the discovery cut-off date to September 29, 2006, ordering that production by Defendants of compensation-related documents for the approximately fifteen officers, directors and others shall be provided through December 31, 2001, and ordering that production of drafts of business plans (specifically referring to stock buy backs).

**B.  Notices to Admit.**

82.     On October 17, 2006, Defendants submitted their Memorandum of Law in Support of Motion for Protective Order Regarding Plaintiffs' Notices to Admit which were accompanied by the Affirmation of Daniel J. Spillane.

83.     On November 7, 2006, Plaintiffs served their Memorandum of Law in Opposition to Defendants' Motion for Protective Order Regarding Plaintiffs' Notices to Admit and the accompanying Affirmation of Jody Krisiloff, dated November 7, 2006.

84.     On November 15, 2006, Defendants submitted their Reply Memorandum of Law in Further Support of Defendants' Motion for a Protective Order.

85.     Plaintiffs also issued further document requests to MetLife's Advisors.  For example:

    A.     On June 14, 2004, Plaintiffs issued subpoenas to MetLife's Advisors.

    B.     On January 25, 2005, Plaintiffs served Credit Suisse Group ("CSG") with a subpoena seeking documents stemming from the relationship between CSG and two Officer-Defendants.

    C.     On January 25 and April 15, 2005, telephonic discovery conferences were held before Special Referee Lowenstein and, on April 27, 2005, the Special Referee issued a discovery order relating to discovery disputes arising from the subpoenas.

    D.     On July 28, 2005, Special Referee Lowenstein entered a discovery order ("July 2005 Discovery Order") directing CSG to search for and produce material and relevant documents.

        (1)   On August 17, 2005, Plaintiffs submitted their 15-page Memorandum of Law in Opposition to Motion of Non-Party Credit Suisse Group to Vacate Special Referee's Discover Order which was accompanied by the 17-page Affidavit of Jody R. Krisiloff, Esq, sworn August 11, 2005.

16

(2)   On September 26, 2005, the Court heard oral argument on CSG's motion to vacate the July 28, 2005 Order.

(3)   On March 29, 2006, the Court vacated the order and quashed the subpoena.

86.   As a result of the foregoing, MetLife produced millions of pages of documents and emails.

87.   Plaintiffs reviewed these documents and issued literally dozens of notices for examination before trial.

### 14.   The Notices of Examinations Before Trial

88.   Plaintiffs issued notices for the examination before trial ("EBT") of the following deponents on the dates as follows:  The Superintendent of Insurance of the State of New York (issued on June 9, 2004);  Robert H. Benmosche (November 17, 2004); Harry P. Kamen and  Joseph A. Reali (January 5, 2005); Credit Suisse Group (by Brady Dougan, Brian Finn, Stephen Volk and/or Barbara Yastine) (January 25, 2005); Lisa M. Weber, William J. Wheeler, Stewart Nagler and Gerald Clark (April 18, 2005);  Robert H. Benmosche and Gerald Clark (based on the direction of Referee Lowenstein) (June 13, 2005);  Richard Schweinberg (June 30, 2005); Ruth J. Simmons, Curtis H. Barnette, Burton A. Dole, Jr., James R. Houghton, Charles M. Leighton, Robert G. Schwartz, William C. Steere, Jr., Joan Ganz Cooney, John J. Phelan and Hugh B. Price (July 8, 2005); Gwenn Carr, Helene Kaplan, James Benson, Joseph Dunn, Thomas Hogan, Judy Weiss, David Parsons, John Tweedie, Joseph J. Reo, William Toppeta, Eric Steigerwald, Gary Beller, James Petrosini, C. Robert Hendrikson and John Chatfield III (July 11, 2005); David Parsons, Michael Harwood, Howard Kurpit and John Nadel (July 15, 2005); David Parsons

(September 7, 2005); Eric Steigerwalt, John Tweedie and Lisa Weber (September 7 and 19, 2005); Hugh Price (October 21, 2005); Jonathan Plutzik, Peter Hammack and Caitlin Long (October 25, 26 and 28, 2005).

89.     Between July 20, 2005 and March 10, 2006, Plaintiffs deposed the following witnesses:  Gerald Clark, Robert Benmosche, Stuart Nagler, David Parsons, Joseph Reali, Harry Kamen, William Wheeler, Eric Steigerwalt, Lisa Weber, Judy Weiss, Hugh Price, John Tweedie, James Petrosini, Beverly Aisenbrey, Douglas Barone, Jonathan Plutzik, Peter Enns, Charles Leighton, Gary Wozniak, Howard Kurpit, James Houghton, William Steere, Burton Dole, Ruth Simmons.

90.     Defendants frequently opposed the depositions of witnesses.

A.      On June 27, 2005, the Special Referee held a conference, and entered an order requiring that the parties to workout a schedule for depositions noticed on or before July 13, 2005, and that Plaintiffs serve remaining deposition notices by July 11, 2005.  Compliance Conference Order, dated June 27, 2005.

B.      On October 28, 2005, the Special Referee ordered, among other things, the depositions of knowledgeable witnesses on the buyback numbers in MetLife's 2000-2002 Business Plan and executive compensation plans.  Order, dated October 28, 2005.

C.      Plaintiffs moved to compel the EBTs of the named Defendants.  *See* November 14, 2005, Krisiloff Reply Affidavit, at par. 1.

D.      On February 15, 2006, the Special Referee ordered, among other things, the production of documents relating to capital management and denied

18

Plaintiffs' request for production of drafts of business plans.  Order, dated February 15, 2006.

    E.      On February 22, 2006, Plaintiffs moved by Order to Show Cause Why Plaintiffs Should Not be Permitted to Seek an Order Vacating in Part the February 15, 2006 Discovery Order of Special Referee Lowenstein.

91.    As a result of these motions, the Court ordered the depositions as to certain witnesses and denied them as to certain deponents.

### 15.  Experts

92.    On April 10, 2006, the parties exchanged CPLR 3101 Disclosures Regarding Experts (Plaintiffs' CPLR 3102 Disclosures Regarding Experts consisted of 30 pages).

93.    After further expert submissions, expert document disclosures occurred.

94.    Between May 30, 2006 and July 26, 2006, the parties deposed each of the foregoing experts as follows:

    A.      Plaintiffs' experts:  Timothy Loughran (on May 30, 2006); Dwight Bartlett (June 8, 2006); R. Alan Miller (July 14, 2006).

    B.      Defendants' experts:  Brian Foley (on July 19, 2006); Michael Keable (July 21, 2006); Charles Carroll (July 26, 2006).

95.    Between September 1 and September 27, 2006, the parties argued over changes in the transcripts of the depositions of the experts.

### 16.    Federal Plaintiffs' Securities Litigation Uniform Standards Act of 1988 ("SLUSA") Motion

96.     On December 21, 2005, the federal plaintiffs moved to stay the state court action.[6]

97.     On January 28, 2006, the state Plaintiffs filed their 25-page *Fiala* Plaintiffs' Memorandum in Opposition to the Motion to Enjoin *Fiala* which was accompanied by the Affidavit of Jody Krisiloff, sworn January 27, 2006.

98.     On February 2, 2006, the federal plaintiffs filed their Reply Memorandum in Support of Motion to Enjoin A State Action That Is Barred by Federal Securities Law.

99.     On February 3, 2006, oral argument on the federal plaintiffs' motion to enjoin was held.

100.    On August 7, 2006, the Court ruled denying the federal plaintiffs' SLUSA motion in its entirety.  *In re Metlife Demutualization Litig.*, 2006 WL 2349998 (E.D.N.Y. 2006).  On August 28, 2006, the District Court filed an Amended Memorandum and Order denying the federal plaintiffs' motion to enjoin *Fiala*.

101.    To avoid a "race to the bottom," on December 18, 2006, the federal and state plaintiffs entered into a stipulation that was not filed concerning the future prosecution of the case.

**17.   Defendants' Summary Judgment Motion**

102.    On July 28, 2008, Defendants moved for an Order to Show Cause Why Summary Judgment Should Not Be Entered In Favor Of Defendants pursuant to CPLR 3215(b). Defendants' motion was accompanied by Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, the Affirmations of Carl Micarelli and Eric D. Meyer, and a Statement of Material Facts Pursuant to Commercial Division Rule 19-a.

---

[6] On July 14, 2004, Stamell & Schager, LLP served upon Lovell Stewart Halebian LLP a subpoena in the federal action for all documents produced in *Fiala* and *Shah*.  On June 7, 2005, Lovell Stewart Halebian LLP produced to Stamell & Schager, LLP documents in response to the July 14, 2004 subpoena.

103.   Defendants argued, among other things, that by the First Department's 2004 decision in this case, Plaintiffs' claims for common law fraud and violation of New York Insurance Law § 7312 were "unequivocally barred" because the New York Superintendent of Insurance was aware that Defendants were likely to conduct share repurchases after the Plan became effective, and that with that knowledge, the Superintendent approved the Plan, the number of shares to be issued in the IPO of MetLife, Inc. common stock, and the IPO price. Defendants also argued that there was no evidence or insufficient evidence of the existence of a buyback plan, of reliance on the omission of to disclose the plan, or of the alleged unfairness of any such plan.

104.   Plaintiffs responded to Defendants' motion by submitting their 40-page Memorandum in Opposition to Defendants' Motion for Summary Judgment and, on November 13, 2008, their 81-page Counterstatement of Material Facts Pursuant to Commercial Division Rule 19-a In Opposition to Defendants' Motion for Summary Judgment.  Plaintiffs' opposition was accompanied by the Affidavits of Timothy Loughran and R. Alan Miller, both sworn September 17, 2008.

105.   Plaintiffs argued among other things,

(a) that the evidence of a buyback previously found sufficient by the First Department to provide cause of action for fraud had been greatly enhanced by additional documents and testimony such that there was overwhelming evidence of the existence of a plan.

(b) that Plaintiffs' expert testimony, corroborated by key admissions by the Defendants expert, demonstrated  that the compensation to policyholders had been materially reduced by such buyback plan, and

21

(c)  that all policyholders had been forced to charge their position based on the IPO price as a result of the fraud, which amply satisfied the reliance requirement and that the omission was material and, therefore, reliance could be presumed.

106.    On September 24 (and November 3), 2008, Defendants submitted their Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment with the accompanying Affirmation of Donna Kronzman in Further Support of Defendants' Motion for Summary Judgment and the Reply Affidavit of  Michael Keable.

107.    Thereafter, oral argument of the summary judgment motion was held.

108.    This motion for summary judgment was undecided and remained pending at the time of the settlement.